No. 46,970

HERMAN W. DUFFIN and EUGENE C. HAAS, CO-PARTNERS, *Appellants,*
v. LEE PATRICK, *Appellee.*

(512 P. 2d 442)

Opinion filed July 14, 1973.

*Edward A. McConwell,* of Shawnee Mission, argued the cause, and was on the brief for the appellants.

*James L. Eisenbrandt,* of Mission, argued the cause, and *Kenneth P. Soden,* of Mission, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action for damages for breach of contract for sale of real estate. Trial to the court resulted in judgment for the defendant-purchaser from which the plaintiffs-sellers have appealed.

Appellants assert several procedural errors; however, in view of our ultimate disposition of the appeal upon issues of substantive law mention will be made of but two procedural matters.

After a somewhat tortured course in district court, contributed to largely by counsel no longer in the case, the action was heard on the merits and submitted to the trial court for decision but was not decided until six months later. Prior to submission each side had filed requested findings of fact and conclusions of law with supporting briefs. Meanwhile the trial judge did not comply with our Rule No. 126 (209 Kan. liii) which provides in part:

*"Matters Taken Under Advisement.* All civil matters taken under advisement by a district judge shall be decided with dispatch and within such time as justice may require, and if not decided within 90 days after final submission thereof, the judge shall, within five days after expiration of said 90 days, file with the Judicial Administrator a written report of such case setting forth the title and number of the case, the nature of the matter taken under advisement, the pertinent facts relating thereto, and the reasons why a judgment, ruling or decision has not been entered."

The foregoing rule was adopted by this court pursuant to legislative concern contained in that which is now K. S. A. 1972 Supp. 60-252(a), and 60-252(b). In the case at bar the trial judge made no accounting to the judicial administrator as to the reason for the delay in his decision. After the default was called to the attention of this court, a letter of admonition by the departmental justice was addressed to the trial judge stressing the public interest in the prompt dispatch of legal business in compliance with Rule No. 126.

Appellants now urge as ground for reversal and new trial the trial court's failure to comply with the rule. This court has already acted on the matter and the measure suggested by appellants seems unwarranted. Nonetheless it is appropriate to recognize that delay in the administration of justice has been a cause of complaint in the past. With the judicial manpower now available under the judicial departmental reform act (K. S. A. 1972 Supp. 20-318, *et*

*seq.*) there should be little if any reason for judicial delay in the disposition of litigation. Rule No. 126 contemplates the earliest dispatch of court business compatible with the ends of justice. Its observance in letter and spirit is commended in maintenance of that goal.

In similar vein appellants voice complaint against the abbreviated nature of the findings of fact and conclusions of law set forth in the trial court's memorandum decision. K. S. A. 60-252 (*a*) provides that in actions tried upon the facts without a jury the judge shall find and state the controlling facts. This statute is implemented by our Rule No. 116 (209 Kan. xxxviii) which provides:

"*Reasons for Decisions.* In all contested matters submitted to a judge without a jury, the judge shall, in addition to stating the controlling facts required by K. S. A. 60-252, briefly state the legal principles controlling the decision. . . ."

In *Andrews v. Board of County Commissioners,* 207 Kan. 548, 485 P. 2d 1260, we held that the findings should not only be sufficient to resolve the issues, they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied in reaching it. The rules requiring expression by the trial judge of the controlling facts and principles of law are designed as an aid to the integrity of the decision. They are mandatory and should be fairly observed. Definite and pertinent findings and conclusions on controlling matters should be made. We do not suggest that requested findings and conclusions submitted by the prevailing party are to be routinely adopted by the trial court; rather, the court's findings and conclusions should reflect the factual determining and reasoning processes through which the decision has actually been reached (see 9 Wright and Miller, Federal Practice and Procedure, § 2578).

We think the memorandum decision embodying the trial court's opinion, to be quoted hereinafter, might well have been more complete. However, appellee rests upon the findings and conclusions actually made and our review will not be inhibited by lack of a more comprehensive statement.

Proceeding to the merits, we briefly recite the pertinent facts concerning which there is no dispute.

Appellant Duffin deals in real estate; appellant Haas is a dentist; as co-partners they owned or had control of seven lots in the city of Mission, which they desired to sell, zoned for commercial office

buildings. Appellee Patrick is a dentist; he desired to purchase appellants' lots for the purpose of erecting thereon a retirement village. By contract dated April 1, 1970, terms of sale of the property were agreed upon by the parties. The contract contained these provisions:

"WHEREAS, the aforementioned real property is now zoned for a commercial office building, and

"WHEREAS, Patrick has heretofore applied with the City of Mission for a zoning change to allow the construction of a Retirement Village on the real property, and

"WHEREAS, hearing on the zoning change request is scheduled to be heard by the Planning Commission on April 27, 1970, and the City Council on April 29, 1970, and

"WHEREAS, Patrick has agreed that he will not ask that the zoning matter be continued, and

"WHEREAS, Patrick has agreed to purchase the real property from the partnership for the sum of Two Hundred Ninety-Eight Thousand, Seven Hundred and Fifty and no/100's, ($298,750.00) Dollars, contingent only upon the property being zoned to allow a Retirement Village to be constructed, and

"WHEREAS, Patrick has agreed that he will diligently pursue and bear all expenses of obtaining proper Retirement Village zoning on the property.

.   .   .   .   .   .   .   .   .   .   .   .   .

"CLOSING DATE: 2. Final closing shall be as soon as practicable after the meeting of the City Council, April 29, 1970, but, at the option of the partnership may be as long as ninety (90) days from City Council approval.

.   .   .   .   .   .   .   .   .   .   .   .   .

"CONTINGENCY: 5. It is specifically understood and agreed that in the event that subsequent to diligent effort by Patrick, the City Council of Mission denies the afore-mentioned zoning change request at the meeting on April 29, 1970, that there shall be no further obligations of the parties other than those enumerated hereafter.

.   .   .   .   .   .   .   .   .   .   .   .   .

"9. Patrick hereby acquiesces that the partnership is changing its position substantially by allowing him to apply for a zoning change on the properties.

"10. Time is of the essence."

Inasmuch as the city had no zoning classification designed for a retirement village appellee Patrick discussed with a member of the Mission planning commission the zoning which would be appropriate for that type of building and as a result filed application with the city for a change to R-5 zoning, the category for high rise apartments. Appellee appeared before the planning commission and presented his plans for a retirement village which specified construction of a building consisting of two stories with a half basement, the building height not to exceed thirty-five feet, to be located at the northwest corner of Sixtieth street and Roe avenue.

He indicated there would be eighty-five parking spaces or less and he was ready to commence construction of the building. Some protest to the requested rezoning was made at the meeting but it is of no consequence here. The planning commission took the application under advisement for further study. Meanwhile it became apparent more time would be needed to complete the zoning change and by mutual agreement of the parties the sale contract was extended beyond the April 29th deadline initially prescribed in it. Thereafter the planning commission met and considered the application. It approved the requested zoning change to R-5, subject to the following restrictions:

"1. Building not to exceed two stories above grade on the 60th Street level. 2. Applicant grant permanent 10' additional street right-of-way for street widening on 60th Street from Highway 50 to Roe. 3. Premises be used only for the purpose of a retirement village. 4. Building permit to be issued within one year or reverts back to R-1 zoning."

The application was then considered at a meeting of the Mission city council. There appellee stated he could build the retirement village he desired with the restrictions which had been imposed, provided the restrictions were placed on the building permit rather than in the zoning ordinance; he could not obtain his financing with the restrictions contained in the ordinance. The matter of the city's waiver of certain requirements was also discussed. The city council voted to accept the planning commission's recommendation and approved the requested change in rezoning with the restrictions and directed the city attorney to prepare an ordinance in accordance therewith. The council also granted certain waivers in connection with parking, sidewalk, unit size and area size. After the city attorney had prepared the proposed ordinance he discussed it with appellee and appellee's then counsel. This attorney stated they didn't want the ordinance "cluttered up" as the lending agency would not approve the financing with restrictions in the zoning ordinance. Appellee's counsel meanwhile had prepared a proposed ordinance granting rezoning to R-5 without mention of any restrictions and also a separate document to be signed by appellee containing a covenant to the effect he would comply with all the restrictions which had been imposed. Appellee did not want this instrument to be recorded. After researching this counterproposal by appellee the city attorney declined to recommend its acceptance by the city council. Because of the waivers it had granted, the city council referred the entire matter back to the planning commission

for reconsideration. The planning commission adhered to its recommendation in favor of granting the rezoning with the restrictions and the city's waivers. The upshot of the matter was that appellee remained firm in his position he wanted any restrictions placed on the building permit rather than in the zoning ordinance; without clearcut zoning for which he had applied he couldn't get financing; he stated if he could not get the zoning without the restrictions in the ordinance he didn't want it at all and would not accept the rezoning. The city council then treated the application as withdrawn and voted to rescind its previous action granting the rezoning. No rezoning ordinance was ever adopted or published.

Appellee testified he had had an oral commitment from a lending agency for his financing prior to the initial action by the city council; after that action he had no further discussion with the lending agency respecting financing and he made no application elsewhere for financing. He conceded that after the city council's final action he understood he would have to submit a new application to obtain any rezoning change.

Appellants' suit for damages for breach of contract was filed on the theory appellee had obtained the zoning necessary to allow construction of a retirement village, which satisfied the only contingency in the contract, and he was unjustified in refusing to perform his obligations thereunder.

The memorandum decision filed by the trial judge was as follows:

"On this 10th day of May, 1972, the Court, having heard the evidence presented and having examined the pleadings and suggested findings of fact and conclusions of law, together with memoranda filed by counsel herein, finds that the restrictions placed upon the rezoning of the land involved herein to 'R-5' made it impossible for defendant to obtain the financing for the project; defendant, therefore, was unable to obtain zoning 'to allow a Retirement Village to be constructed.'

"The Court therefore finds generally for the defendant and against plaintiffs. Ruling is reserved on the matter of taxation of costs and in regard to the matter of attorney fees heretofore allowed to plaintiffs."

Appellants contend the language in the contract is clear and unambiguous; that it was not made conditional upon obtaining financing for the project, but only upon obtaining rezoning which would permit construction of the building to be used as a retirement village. They point out that appellee testified he could construct his proposed building under the zoning with its restrictions and indeed this fact is conceded by appellee in his brief, the only qualification being that the restrictions be on the building permit.

In support of the judgment appellee contends the trial court rendered its decision upon determination of factual questions alone. He asserts the trial court made three findings of fact: (1) That there were restrictions placed upon the rezoning of the land to R-5; (2) those restrictions made it impossible for appellee to obtain the financing for the project; and (3) appellee was therefore unable to obtain zoning to allow a retirement village to be constructed. He argues a fact question was presented as to whether a breach of contract had occurred and the trial court in effect found no breach had been shown, and the court's findings are sufficiently supported by evidence.

Decision in the case obviously turns upon the interpretation to be given the contract. Preliminarily, a few general principles may be noted. The construction and interpretation of a contract unambiguous in its terms is a question of law for the court (*Geier v. Eagle-Cherokee Coal Mining Co.*, 181 Kan. 567, 313 P. 2d 731) and the intention of the parties and the meaning of such a contract are to be deduced from the plain, general and common meaning of those terms (*Anderson v. Rexroad*, 175 Kan. 676, 266 P. 2d 320; *Darby v. Keeran*, 211 Kan. 133, 505 P. 2d 710). Words cannot be written into the contract which import an intent wholly unexpressed when it was executed (*Fairlawn Plaza Development, Inc., v. Fleming Co., Inc.*, 210 Kan. 459, 502 P. 2d 663). In *Wood v. Hatcher*, 199 Kan. 238, 428 P. 2d 799, we had this to say respecting interpretation of a contract of sale:

"The words incomplete and ambiguous are not synonymous. The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings. A contract is not ambiguous when it fails to contain a restriction against a sale which one party says should have been inserted. Ambiguity does not arise from total omission." (p. 242.)

Applying the foregoing, we are unable to find ambiguity in the contract. Appellee does not directly assert or rely on any ambiguity in it and, if he did, we know of nothing in the evidence which would lend support to his cause. The only mention of financing insofar as appellants were concerned was testimony that appellant Haas was aware that appellee did not have the necessary financing, he had an oral commitment and would get it after the property was rezoned. The only contingency mentioned in the contract was rezoning "to allow a Retirement Village to be constructed". The contract was not made contingent upon appellee's ability to obtain financing or

upon rezoning to allow financing to be obtained. In fact the contract was completely silent on the subject of obtaining financing. A contract for sale of real estate may well contain a clause making the sale conditional upon obtaining rezoning from one classification to another (see e. g., Arnold, Modern Real Estate and Mortgage Forms, Supp. 1-10 and 1-11) and it may also contain a clause making the contract conditional upon the ability to obtain financing or loan commitment by or on behalf of the purchaser (*ibid.*, 1-18 and Supp. 1-7), but the two are separate and distinct items with different provisos appropriate to each. Obtaining necessary financing doubtless was a matter of prime concern to appellee but unfortunately the contract provided him no insulation from that hazard. This court may not rewrite a contract or make a new contract for the parties under the guise of construction (*Wood v. Hatcher,* supra). Appellee has conceded throughout he could construct his proposed building with the zoning which was approved by the city.

The trial court's findings assume appellee's obligation under the contract was conditional upon a change in zoning classification to permit financing for the retirement village project to be obtained. That interpretation is incorrect as a matter of law; hence the findings cannot be said to support the judgment rendered and that judgment must be set aside. The city did not deny the zoning change which would have allowed construction of the proposed building within the plain meaning of the contract. Appellee remained obligated under that contract and is liable for its breach. In the absence of fraud or mutual mistake a clear and unambiguous contract must be enforced according to its terms (*Fast v. Kahan,* 206 Kan. 682, 471 P. 2d 958).

The judgment is reversed. The cause is remanded with directions to enter judgment for appellants and against appellee for damages for breach of contract, the amount of such damages to be determined by another judge to be selected by the administrative judge of the tenth judicial district.

APPROVED BY THE COURT.