**BANK OF OKLAHOMA, N.A., a National Banking Association, Plaintiff,**

v.

**FIDELITY STATE BANK AND TRUST COMPANY, DODGE CITY, KANSAS, Defendant.**

No. 83–1747–K.

United States District Court, D. Kansas.

Dec. 9, 1985.

E. Edward Brown, Garden City, Kan., Gregory A. Guerrero, Tulsa, Okl., for plaintiff.

Max E. Estes, Dodge City, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is a tort action between two secured creditors with competing claims in the 1981 crops of their mutual debtors, Louis, Connie and Gail Beery (Beerys). The Bank of Oklahoma (BOK) is seeking recovery from Fidelity State Bank (FSB) for the latter's alleged conversion of the proceeds of the 1981 Beery crops, claiming a superior right to those monies by virtue of a prior perfected security interest in the crops. FSB claims a superior right in the proceeds based on a subordination agreement in which, it argues, BOK subordinated its security interest in the 1981 crops in exchange for FSB's loan to the Beerys to help finance their 1980 and 1981 farm operations.

Defendant FSB has filed a motion to dismiss on grounds BOK may not now maintain this action, having already secured a judgment against the Beerys on their contract and foreclosing against the real estate securing that note. That judgment, however, was obtained in a contract action brought by the Small Business Administration, in which BOK appeared as a defendant. By contrast, this is a tort action against a different party, arising out of different facts, and it does not appear plaintiff is barred from maintaining this action by the principles of *res judicata* and collateral estoppel. Defendant's motion to dismiss is denied.

Plaintiff's motion for partial summary judgment raises the question whether or not BOK subordinated its security interest in the Beerys' 1981 crop, as claimed by FSB. The documentary evidence shows on its face that regardless of what FSB's interpretations and assumptions may have been, BOK at no time subordinated that particular security interest and is therefore entitled to recover on its conversion claim. Plaintiff's motion for partial summary judgment is granted.

### Facts

The easiest way to summarize the critical facts and documentary evidence in this case is by means of the following timetable:

*2/16/78* BOK loaned the Beerys $1,685,000, secured by mortgages on the Beerys' real estate in Gray County, Kansas, and security interests in machinery and equipment, feed, grain and harvested crops owned or thereafter acquired, and in *"all annual and perennial crops of whatever kind and description grown or growing or to be planted or produced on land owned, rented, leased, or hereafter acquired ...."* (Emphasis added.)

*3/17/78 & 4/7/78* BOK's financing statements covering the Beerys' feed, crops, and machinery and equipment were filed with the Kansas Secretary of State and the Gray County Register of Deeds, respectively; both statements recite that *"proceeds* and products of collateral are also covered."

*12/31/79* The Bancoklahoma Agri-Service Corp. (BOASC) loaned the Beerys an unspecified amount of money and took back a "farm operating note."

*7/28/80* Meetings were held between BOK, BOASC, the Beerys, and their guarantors concerning the Beerys' financial difficulties and their failure to make payments on a current basis on the Oklahoma Banks' loans. These parties entered into a written agreement dated July 1, 1980, in which BOK and BOASC agreed to refrain from foreclosing on their collateral in exchange for the Beerys' agreement to secure additional financing from a third party lender. The critical language of that agreement is in ¶ 4:

"Beery agrees that on or before September 30, 1980, he will present to the Bank and Guarantors a plan acceptable to [them] for obtaining new funds from other sources and financial institutions *in amounts sufficient to finance the remainder of the Beery 1980 and 1981 farming operations,* including all existing accounts payable and overdrafts outstanding at the date hereof. *Bank* [BOK and BOASC, collectively] *agrees to subordinate its existing security interest in the 1980 corn, milo and soybean crop and all 1981 crops including corn, milo, soybean, wheat and alfalfa, to such interim lender upon its commitment to fund the farming operations and accounts payable, etc.* Should the proceeds of the 1980 corn, milo and soybean crop be sufficient to repay the interim lender, Beery agrees to pay to the Bank in escrow an amount necessary to assure the payment of the February 1, 1981, principal and interest payment due on the Term Equipment Note." (Emphasis added.)

*8/21/80* BOK, BOASC, the Beerys, and Fidelity State Bank entered into a written subordination agreement, the pertinent portions of which read:

"1. Fidelity represents and warrants that it has made loans to the Borrower in the principal amount of Four Hundred Thousand Dollars ($400,000) evidenced by a promissory note dated August 21, 1980, payable with interest as provided therein on or before December 19, 1980. To secure the Fidelity loan, the Borrower has granted a security interest in the Borrower's 1980 growing crops of corn, milo and soybeans growing on certain lands in Gray County, Kansas....

"2. *The Bank hereby subordinates its first and prior security interest in the Borrower's 1980 growing crops of corn, milo, and soybeans* growing on the lands listed on Exhibit 'A' hereto *to the security interest of Fidelity in such crops up to the amount of $400,000* plus accrued interest and reasonable costs of collection incurred in connection therewith." (Emphasis added.)

*8/21/80* BOK, BOASC, Fidelity and the Beerys' guarantors sign and enter into a letter agreement prepared by the attorney for BOK, which recites:

"The Beerys have requested, and each of the guarantors have consented to the *BOK's and BOASC's subordination of their lien interest in the Beerys' 1980 growing crops of corn, milo and soybeans* pursuant to the terms of [the] Subordination Agreement.... The Agreement contemplates the Beerys obtaining a plan acceptable to the bank and the guarantors for obtaining new funds in an amount sufficient to finance the remainder of the Beery 1980 and 1981 farming operations. *It is understood that the $400,000 loan from Fidelity State Bank may not be sufficient to fund all of the operations contemplated in Paragraph 4 of the [July 1, 1980] Agreement.* However, each of you approve the subordination and agree that our subordination of security interest in the 1980 corn, milo and soybean crop to Fidelity State does not effect [sic] your obligations to BOK and BOASC and is approved by each of you." (Emphasis added.)

This letter agreement was signed by Timothy Jackson, a commercial officer on behalf of BOK and BOASC; Thomas Martin, acting president of FSB; and the three guarantors; but was not signed by the Beerys.

*8/21/80* FSB and the Beerys entered into a promissory note for $400,000, secured by a security agreement of the same date covering the "*1980 Growing Crops of Corn, Milo, and Soybeans....*" (Emphasis added.)

*8/25/80* FSB's financing statement covering the Beerys' 1980 growing crops of corn, milo and soybeans was filed with the Gray County Register of Deeds.

*11/25/80* Beerys' BOASC operating note fell due, which they were required to pay under the terms of paragraph 1 of the July 1, 1980 agreement. Beery persuaded the Oklahoma banks to release their security interest in his 1980 alfalfa crop to FSB in exchange for the latter's loan of an additional $271,734.15 to pay off the BOASC operating note. The Beerys then entered into a new security agreement with FSB granting it a security interest in stored corn, milo, soybeans and alfalfa, which secured a new consolidated note in the amount of $697,850, also dated November 25, 1980. According to plaintiff's computations, the value of the combined collateral, the 1980 corn, milo, soybean and alfalfa crops, exceeded the amount of FSB's consolidated loan by a margin of at least approximately $727,000.

*11/28/80* Timothy Jackson, a commercial lending officer acting on behalf of BOASC and BOK wrote a letter to FSB regarding the formers' release of their security interest in the Beerys' alfalfa crop. In pertinent part, the letter read:

"The purpose of this letter is to inform your office of the release of our Security Interest in the above-named subject 1980 Corn, Milo, Soybean and Alfalfa Harvested Farm Products, *while all other Security Interests shall remain in full force and effect,* as evidenced by the attached UCC–3 Financing Statement....' (Emphasis added.)

*12/1/80* FSB filed a new financing statement with the Gray County Register of Deeds covering the Beerys' corn, milo, soybeans and alfalfa *in storage.*

*Spring 1981* Without notice to BOK or BOASC, FSB permitted the Beerys to use some of the proceeds of the 1980 stored corn, milo, soybeans and alfalfa to finish paying the 1980 operating expenses and additional expenses in preparation for the 1981 farming year, rather than applying those proceeds to reduce the Beerys' debt to FSB as originally anticipated. This permission was given to the Beerys by an FSB officer who believed paragraph 4 of the July 1, 1980 agreement authorized FSB to enter such an arrangement, and that as a result FSB would thereby obtain a security interest in the Beerys' *1981* crops superior to that of BOK.

*1981* Beery ultimately paid off the FSB debt with funds which included all of the proceeds from the 1981 crops. Afterwards, no money from the 1981 crops remained to apply toward or satisfy the Beerys' debt to BOK.

*8/2/83* BOK filed the present suit seeking recovery from FSB for its alleged conversion of the proceeds of the 1981 crops, contrary to BOK's prior perfected security interest therein.

*8/20/84* In *United States v. Beery,* No. 82–1651 (D.Kan.1984), BOK obtained a judgment *in rem* against Louis Beery and *in personam* against Connie and Gail Beery, for $992,854.87, with interest at 18% until paid. Judge Theis ordered that BOK's mortgage on real estate in Gray County securing the Beerys' note be foreclosed and that property be sold in partial satisfaction of those judgments. Slip op. at 9.

*12/20/84* BOK filed its Order Confirming Marshal's Sale in Case No. 82–1651. BOK itself bought the real estate at that sale for $274,750, and reduced the judgment rendered in its favor by the same amount.

*Defendant's Motion to Dismiss*

■ The issue presented by FSB's motion to dismiss is whether, by virtue of the judgments obtained by BOK in Case No. 82–1651 and the subsequent foreclosure on the Beerys' real estate, plaintiff is now barred under the principles of *res judicata* from maintaining this action to recover for defendant's alleged conversion of the proceeds of the 1981 crops in which plaintiff held a prior perfected security interest. Specifically, defendant FSB argues that the Beery notes and indebtedness merged into the judgment rendered in BOK's favor in the prior case and were accordingly extinguished, and that BOK cannot maintain a second action such as this to foreclose the underlying mortgage or security interests because those causes of action were not raised in the earlier case. In short, FSB contends the security interest underlying BOK's claim of conversion in this case has already merged into the prior judgment and cannot now be relied on in this action.

The primary support for defendant's position is Judge Theis' opinion in *In re Wilson,* 390 F.Supp. 1121 (D.Kan.1975). That case held that a secured lender's failure to enforce an Article 9 security interest at the time the lender obtained a personal judgment against the debtor constituted an impermissible splitting of a cause of action under Kansas law; as a result, the lender was not allowed to file a secured claim when the debtor later filed bankruptcy. Judge Theis reached this decision relying on a number of earlier Kansas cases indicating

> that under the principles of *res judicata,* when a creditor brings either an action on a note or an action to foreclose a real estate mortgage securing that note, he has spent his one opportunity to judicially enforce the obligation. If the creditor first forecloses on the mortgage, he is precluded from bringing a subsequent action to obtain an *in personam* judgment on the note, and if he first obtains an *in personam* judgment, he is precluded from bringing a subsequent action to foreclose the mortgage. If the creditor

wishs to both foreclose the mortgage and obtain an *in personam* judgment, he must assert both claims in a single action.

*Wilson,* 390 F.Supp. at 1124, *citing Matter of Downey,* No. 8726–B–2 (D.Kan.1964); *Kearny v. Nunn,* 156 Kan. 563, 134 P.2d 635 (1943); and *Rossiter v. Merriman,* 80 Kan. 739, 104 P. 858 (1909). The secured creditor in *Wilson* argued it was entitled to proceed in separate actions under the following provisions of the Kansas UCC, K.S.A. 84–9–501:

> (1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part.... He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.... The rights and remedies referred to in this subsection are cumulative.
>
> \*    \*    \*    \*    \*    \*
>
> (5) When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral....

Judge Theis stated that these provisions supported, rather than nullified, application of the principles of *res judicata;* "[s]ince the rights and remedies are cumulative, the creditor is not forced to elect between the remedies and thus is free to assert them simultaneously" in his one action. *Wilson, id.* at 1125.

Defendant FSB's contentions that *Wilson* applies to this case and bars any recovery by plaintiff BOK are rejected for two reasons. First, the unique facts of this case remove it from the framework in which *Wilson* was decided, and it is therefore distinguishable. In *Wilson,* the secured creditor acted affirmatively to institute an action on the debt and obtain an *in personam* judgment for the full amount of the loan, without attempting to replevin or foreclose on the collateral. By contrast, in this case plaintiff BOK has not acted in an affirmative manner exhibiting any election of remedies on its part, to which it should now be bound. Rather, BOK's interests in the Beerys' note and the real estate securing that indebtedness were asserted in the prior case, No. 82–1651, purely in a defensive position in the contract action brought by the United States on behalf of the Small Business Administration. Especially when one considers that BOK's claim in the present case is brought against a different party, not the Beerys but FSB, and BOK's claim sounds not in contract but in tort, it would be inequitable and unreasonable to now say BOK, in its earlier position as one of a number of defendants in the United States' contract action, should nevertheless have interposed all claims potentially arising out of its security interests in the Beerys' *personal* property.

The second, and perhaps more important, reason to reject defendant's argument is that *Wilson* has been substantially discredited by both the Tenth Circuit Court of Appeals and UCC commentators. In *Hill v. Bank of Colorado,* 648 F.2d 1282 (10th Cir.1981), the court affirmed Chief Judge O'Connor's holding that under Colorado UCC law the bar against cumulative actions on an obligation does *not* preclude a bank, which had taken an *in personam* judgment prior to the debtor's bankruptcy but had failed to foreclose or execute on the judgment, from enforcing its security agreement against the bankruptcy trustee. That conclusion was reached in large part on the Colorado Court of Appeals decision in *Bilar, Inc. v. Sherman,* 40 Colo.App. 38, 572 P.2d 489 (1977), holding that under § 4–9–501 of the Colorado UCC a secured creditor may pursue those methods of collection afforded under the code or through judicial processes otherwise available, and when the latter course is chosen the creditor does *not* relinquish any rights obtained by virtue of his security interest.

Defendant FSB in this case argues *Hill v. Bank of Colorado* does not apply because that decision involved Colorado law rather than that of Kansas. However, UCC § 4–9–501 is identical in both states,

and *Hill* has been interpreted as the Tenth Circuit's rejection of the *Wilson* analysis. Commenting on the two cases, Professor Barkley Clark said about *Wilson*:

Even when limited to its facts, however, the *Wilson* case seems dead wrong. If the election of remedies doctrine is to be resurrected, it should be done by the legislature and not the courts.

Clark, *The Law of Secured Transactions Under the UCC*, ¶ 4.3[2] (1980). Regarding the Tenth Circuit's later decision in *Hill*, he states:

The Tenth Circuit has rejected the approach taken to cumulative remedies by *In re Wilson* .... *In re Hill*, like *Wilson*, involved a situation where a bank with a security interest in the bankrupt's personal property had taken an *in personam* judgment prior to bankruptcy and had failed to execute or foreclose on the judgment. The Tenth Circuit held that such abstinence did not change the bank's status to that of a general unsecured creditor in the bankruptcy proceeding. *The doctrine of res judicata did not apply because that doctrine only provides that the same parties may not litigate the same controversy twice; it does not preclude parties from asserting different consistent remedies.* Under § 9–501(1), the bank's remedies were cumulative. Thus, it was consistent for the bank, even though it failed to pursue the collateral after obtaining the *in personam* judgment against the debtor, to retain its status as a perfected secured creditor in the bankruptcy proceeding. Although the Tenth Circuit held that Colorado law rather than Kansas law controlled and thus did not expressly overrule the *Wilson* case, the prior decision was clearly rejected by the higher court, particularly since the Colorado and Kansas versions of Article 9 are exactly the same. Thus, the *Wilson* decision, which badly misconstrued Article 9, is effectively scotched.

Clark, *The Law of Secured Transactions*, ¶ 4.3[2] (1985 Cum.Supp. No. 2) (emphasis added).

■ In conclusion, the Kansas appellate courts have at no time reaffirmed their adherence to the waiver of remedy doctrine after the enactment of K.S.A. 84–9–501, nor have they adopted the *Wilson* decision and rationale. For that reason, and because of the Tenth Circuit's implied rejection of *Wilson* in the *Hill* case, the Court does not feel bound by that case. The UCC clearly preserves for a secured creditor a variety of recourses after default, in addition to those otherwise available through judicial process, and plaintiff BOK is certainly free to now seek recovery for defendant's conversion, notwithstanding BOK's prior judgment *in rem* and foreclosure of the real estate mortgage. Defendant's motion to dismiss is denied.

### *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff's motion for partial summary judgment seeks to establish as a matter of law its superior right to the proceeds of the Beerys' 1981 crops by virtue of BOK's prior perfected security interest. The precise issue involved in the motion is whether FSB is correct in its assertion BOK subordinated its security interest in the 1981 crops at the same time it subordinated the security interest in the 1980 crops to FSB in exchange for FSB's loan to the Beerys. Repetitive and voluminous briefs have been filed by both parties, but the question involves only interpretation of the written documents previously summarized.

■ Those written instruments are clear on their face that although BOK made a general commitment to the Beerys in the July 1, 1980 agreement that it would subordinate its security interest in *both* the 1980 and 1981 crops to an interim lender who advanced sufficient money to fund the Beerys' farming operations for those years, FSB did not provide the Beerys enough money to satisfy that condition and was accordingly only given a prior security interest in the debtors' *1980* crops, with BOK *retaining* its superior status as to the *1981* crops. Defendant attempts to answer plaintiff's motion for partial summary

judgment by claiming that regardless of the particular language used in the parties' subordination agreements and correspondence, FSB was at all times acting in reliance on paragraph 4 of the July 1, 1980 agreement between BOK and the Beerys, promising plaintiff's subordination of its security interest in the crops for *both* years. Under the law governing the construction of contracts, and the actual language contained in the agreements entered into between plaintiff and defendant, those instruments are free from ambiguity and require no extrinsic evidence to aid in their interpretation. The evidence FSB relies on to create "material questions of fact" about the intent of the parties when entering these agreements is therefore inadmissible.

■ Where the provisions of a written contract are clear and unambiguous, there is no occasion for applying the rules of construction, and the contract must be enforced according to its terms so as to give effect to the intention of the parties; that must be determined from the "four corners" of the instrument itself. *Steel v. Eagle*, 207 Kan. 146, 483 P.2d 1063 (1971). The intention of the parties and the meaning of a contract are to be deduced from the instrument where its terms are plain and unambiguous; the facts and circumstances surrounding its execution become competent only in the event the instrument is ambiguous on its face and requires aid to clarify its intent. *Martin v. Edwards*, 219 Kan. 466, 548 P.2d 779 (1976). A contract is "ambiguous" only when the words used to express the meaning and intention of the parties are insufficient in the sense the contract may be understood to reach two or more possible meanings. Ambiguity does not arise, however, from a total omission. *Duffin v. Patrick*, 212 Kan. 772, 512 P.2d 442 (1973). Yet even where a contract is ambiguous, evidence of the facts and circumstances existing prior to and contemporaneous with its execution are competent only to *clarify* the intent and purpose of the contract, not to vary or nullify the clear and positive provisions of the contract. *First National Bank of Olathe v. Clark*,

226 Kan. 619, 602 P.2d 1299 (1979). It is a judicial function to interpret a written contract which is free from ambiguity and does not require oral testimony to determine its meaning. *Pace v. First National Bank of Osawatomie, Kansas*, 271 F.Supp. 230 (D.Kan.1967).

■ Defendant FSB places great reliance on the provisions of paragraph 4 of the July 1, 1980 agreement between BOK and the Beerys, in which BOK promised to subordinate its security interests in both the 1980 and 1981 crops to an interim lender who would fund the farming operations for those years. For two reasons, however, evidence of FSB's alleged reliance on that provision is not admissible to vary the express terms of the subsequent instruments in which BOK released only its security interest in the *1980* crops. First, there is evidence within those subsequent writings themselves that FSB did not loan the Beerys sufficient funds for both the 1980 and 1981 operating years, and therefore would not qualify for priority even under the terms of the July 1, 1980 agreement. Secondly, and more importantly, because BOK and FSB themselves later entered into written agreements expressly defining their rights, it does not appear FSB can now admit into evidence and rely on the provisions of the earlier agreement, particularly in an effort to materially vary the clear provisions of the parties' own later contracts. As a general rule, when a contract is complete and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by writing is inadmissible. *Hird v. Williams*, 224 Kan. 14, 577 P.2d 1173 (1978). The Kansas UCC itself provides that a writing intended by the parties as a final expression of their agreement may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. K.S.A. 84-2-202. Under this rule, FSB is limited to defining its rights within the series of written agreements entered into with BOK beginning August 21, 1980.

Those documents, however, may be construed together. Where two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concerning the same subject matter, they will be read and construed together to determine the intent of the parties. *Burge v. Frey*, 545 F.Supp. 1160 (D.Kan.1982); *Hall v. Mullen*, 234 Kan. 1031, 678 P.2d 169 (1984). This rule also applies where the parties involved comply with the provisions of interrelated documents, although one of the documents was not executed by a party to the transaction. *Atlas Industries, Inc. v. National Cash Register*, 216 Kan. 213, 531 P.2d 41 (1975). These principles require the Court to view the series of written agreements beginning August 21, 1980 as a whole. So viewed, they show that in consideration for FSB's initial loan of $400,000 to the Beerys, BOK subordinated its security interest in the 1980 corn, milo and soybean crops, and that the parties jointly recognized that amount was likely insufficient to fund the Beerys' farming operations for both 1980 and 1981. Next, in consideration of an additional loan of $271,734.15 from FSB to the Beerys, BOK subordinated its security interest in the 1980 alfalfa crop, *expressly stating to FSB that BOK's other security interests shall remain in full force and effect.* Now FSB argues to the Court that in the spring of 1981, when it allowed Beery to use the proceeds of his 1980 crops to partially finance this *1981* operations rather than reduce his debt to FSB, that action was taken in reliance on the *July 1, 1980* agreement and FSB's belief it would, as a result, receive BOK's subordination of its security interest in the 1981 crops. The only conclusion is that that action was undertaken without justification, and certainly BOK should not now be bound by the subsequent, unilateral suppositions of FSB and its officers. Courts must be extremely careful in referring to the actions of parties after a contract is executed as an aid to interpreting intention, particularly the actions of one party not concurred in by the other. *Jennings v. General Medical Corp.*, 604 F.2d 1300 (10th Cir.1979).

Absent fraud or mutual mistake, a clear and unambiguous contract must be enforced according to its terms. *Duffin v. Patrick*, 212 Kan. 772, 512 P.2d 442 (1973). There is in this case no *mutual* mistake, only the unilateral mistake of FSB and its officers in relying on the general provisions of the July 1, 1980 agreement when those terms had been specifically modified by the particular subsequent agreements to which both BOK and FSB were parties. In those written instruments BOK subordinated only its security interest in Beerys' 1980 crops, not the 1981 crops. FSB, as a result, acquired the proceeds of the 1981 crops in violation of BOK's retained rights, and should now be held liable therefor.

FSB has also raised the defenses of laches, waiver, and equitable estoppel. Each are equitable limitations addressed to the discretion of the Court. No unreasonable delay is present in the record, and those defenses are denied.

IT IS THEREFORE ORDERED this 9 day of December, 1985, that defendant's motion to dismiss is denied, and plaintiff's motion for partial summary judgment is granted.