No. 44,778

JOHN W. WOOD, *Appellee,* v. HENRY HATCHER, *Appellant.*

(428 P. 2d 799)

Opinion filed June 10, 1967.

*James R. Yoxall,* of Liberal, argued the cause and *Auburn G. Light* and *Stanley E. Antrim,* of Liberal, were with him on the brief for the appellant.

*Glenn J. Shanahan,* of Wichita, and *Merle Lansden,* of Beaver, Oklahoma, argued the cause and were on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a summary judgment entered in favor of plaintiff in an action for a declaratory judgment. The action was brought to construe a contract concerning the sale of stock in a savings and loan association.

The parties owned 54% of the common stock of the Liberal Savings & Loan Association, Liberal, Kansas. They executed the agreement giving rise to this action in 1963 and it will be referred to as the 1963 contract. The association had a total of 1000 shares of stock outstanding. The defendant, Henry Hatcher, owned 240 shares. The plaintiff, John W. Wood, owned 300 shares. The contract placed certain restrictions on the sale of stock owned by these parties. The contract was to terminate in event either party lost

ownership of his stock through process of law. Pertinent portions of this contract will be set forth later in this opinion.

The parties agree the contract controls the rights and obligations concerned in this action. They differ in opinion as to proper construction of the contract.

After executing the contract plaintiff acquired 210 additional shares of stock bringing his total to 510 shares. After acquiring these additional shares plaintiff received an offer from James Blakemore to buy his 510 shares of stock. The plaintiff notified the defendant of this offer as required by the contract. The defendant authorized plaintiff to offer Blakemore in addition his 240 shares at the same price per share. Blakemore refused to buy the 750 shares but renewed his offer to buy 510 shares from plaintiff. An agreement of sale was executed by both plaintiff and Blakemore which provided that plaintiff must first comply with the 1963 contract before the sale could be consummated.

Plaintiff made an offer to sell his 510 shares of stock to defendant as required by the 1963 contract. The defendant declined the offer and after ten days the 510 shares were sold to Blakemore.

Disagreement arose between plaintiff and defendant over plaintiff's right to sell his stock to a third party. Plaintiff filed a petition for declaratory judgment to obtain a judicial construction of the 1963 contract. Defendant answered and set up a counterclaim for damages. Testimony by deposition was taken from the defendant, Blakemore and plaintiff. A motion for summary judgment was filed by plaintiff and the court entered a judgment in favor of plaintiff construing the contract to permit the sale. The defendant Henry Hatcher appeals.

The 1963 contract sets out the names of the parties and recites that the defendant owns 24% and the plaintiff owns 30% of the total issued stock of the association. The preface to the numbered sections of the contract states the parties desire to enter into an agreement with reference to (1) the sale of stock, (2) the termination of the agreement, and (3) the sale of stock and voting of stock by a legal representative of a deceased party. The crucial portions of the contract read:

"1. TERM OF AGREEMENT. This agreement shall be binding on the undersigned and their legal representatives for a period of twenty (20) years from the date of this agreement.

"2. SALE OF STOCK. Each party agrees that if he receives an offer for the purchase of his stock from any individual, firm or corporation, hereinafter re-

ferred to as PERSONS, that he will discuss the same with the other party hereto and if both parties to this agreement are willing to sell all of their stock at the price offered, that the party hereto who receives the offer will in turn offer all of the stock of both parties to said PERSONS at the same price.

"If both parties are not agreeable to selling all of their stock, then it is agreed that neither party hereto will sell his stock to any individual, firm or corporation, hereinafter referred to as PERSONS, without first offering the stock to the PURCHASING PARTY at the same price as the SELLING PARTY is being offered for the said stock by said PERSONS. It is agreed that the SELLING PARTY will furnish to the PURCHASING PARTY a firm committment (sic) in writing stating a definite price per share which is being offered for said stock or portion thereof to the SELLING PARTY, which offer is made by said PERSONS, in order that the PURCHASING PARTY may have actual knowledge of the firm committment (sic) being made to the SELLING PARTY.

"It is agreed that the PURCHASING PARTY shall have ten (10) days from the date that the firm committment (sic) is submitted to the PURCHASING PARTY within which to offer in writing to purchase said stock from the SELLING PARTY at the same price and if said offer is not received by the SELLING PARTY by 12:00 o'clock noon on the tenth (10th) day after the original offer is submitted to the PURCHASING PARTY, then and in that event the SELLING PARTY has the right to sell his stock or any portion thereof to any PERSONS he so desires at any price he desires to sell said stock.

"If the offer is accepted by the PURCHASING PARTY and delivered to SELLING PARTY within the time above specified, then the parties hereto shall stipulate and agree in writing as to the terms of said sale to the PURCHASING PARTY.

"3. SALE OF STOCK BY BOTH PARTIES. That if both parties receive an offer for their stock at the same time from the same persons, it being the intention of both parties hereto to dispose of all of the stock they own in the Liberal Savings & Loan Association, Liberal, Kansas, at the same time and to the same PERSONS, that said parties hereto are at liberty to dispose of the stock at such time as they so desire without the consent of the other party.

"4. TERMINATION OF THIS AGREEMENT IN EVENT OF LOSS OF STOCK BY OWNERS OR LEGAL REPRESENTATIVES. It is mutually understood and agreed by and between the parties hereto that this agreement is binding only so long as both parties or their estates are the owners of the same number of shares that they now own as of the date of this agreement or more shares, whichever the case may be, and in the event either party hereto loses ownership of his stock through any process of law, this agreement is null and void."

The balance of the contract has no direct bearing upon the particular question raised in this action. However, item 5 provides that each of the parties is to execute a will or create a trust in order for the legal representative of a deceased party to vote the stock and comply with section 2 in event of sale after death of either of the parties. Item 6 outlines the wishes of the parties in event either of them becomes incompetent and directs the guardian appointed to consider the terms of the agreement.

In granting a declaratory judgment the lower court determined the contract was silent with respect to the rights of the parties if a purchaser refused to buy all of the stock of both parties and desired to purchase the stock of only one party. The court further found, (1) the contract did not contain a general restriction against the sale of stock except under certain prescribed conditions and methods, (2) the contract assumed the inherent right to sell and set out methods to be followed, (3) the contract did not prohibit the sale of plaintiff's stock in the manner in which it was sold to Blakemore, and (4), since plaintiff did have the right to sell, the defendant had no valid grounds for his counterclaim.

The defendant contends the district court erred in construing the written agreement to permit the sale of stock to Blakemore. ' He alleges several grounds upon which he attacks the court's construction of this contract.

First, defendant states the lower court ignored the intent of the parties expressed in the contract which clearly indicates, he says, a desire to retain the majority block of stock held by them until such time as the stock might be disposed of in a block to the same persons as specifically provided in item 3 of the contract.

However, the intention of the parties to a contract is determined by the court from the instrument as a whole, after consideration of all language used anywhere in the instrument, so as to construe the provisions of the entire contract in harmony. (*Kittel v. Krause,* 185 Kan. 681, 347 P. 2d 269; *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803.)

After considering the entire contract we cannot agree that item 3 requires every sale of stock by the parties to be made at the same time to the same persons. The plain wording of this paragraph is prefaced on the premise both parties receive an offer for their stock at the same time from the same persons. In the present case both parties did not receive such an offer. The prospective buyer flatly rejected the offer of defendant. The intention of the parties expressed in item 3 is limited by the introductory words: *"That if both parties receive an offer for their stock at the same time from the same persons,*  . . .*"*

In item 2 of the contract a party is required to discuss an offer for purchase received by him with the other party. It is agreed that this was done by plaintiff when he received the offer from Blakemore. However, the contract is silent as to how to proceed when

an offer to sell all of the stock of both parties is rejected by a buyer. The next paragraph in item 2 provides a method by which either party may purchase the other's stock before a sale to a third party is permitted. This provision would be unnecessary if the parties desired to restrict sale of their stock to a sale in a block as defendant contends.

The defendant lays stress upon the word *"consent"* appearing in item 3. The only consent mentioned in the contract appears in this particular item. In this paragraph the parties say they "are at liberty to dispose of the stock at such time as they desire without the consent of the other party" if both receive an offer at the same time and intend to dispose of such stock to the same persons. We note that item 3 is set forth separately in the contract under the heading, "Sale of Stock by Both Parties." It appears to be self-sufficient. It does not refer specifically to any other item in the contract. It does not appear to control the overall agreement of the parties. It is limited in scope to a sale of stock by both parties at the same time to the same persons.

Appellant contends the contract is incomplete *or* ambiguous. He says the lower court erred in refusing to find it incomplete *or* ambiguous. We agree that the contract is incomplete in the sense it does not provide the restriction which appellant would have us find exists by implication.

We do not agree the contract is ambiguous merely because it fails to have this restriction. The words incomplete and ambiguous are not synonymous. The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings. A contract is not ambiguous when it fails to contain a restriction against a sale which one party says should have been inserted. Ambiguity does not arise from total omission. It arises when application of pertinent rules of interpretation to an instrument as a whole fails to make certain which one of two or more meanings is conveyed by the words employed by the parties. (*Roxana Petroleum Corp. v. Jarvis,* 127 Kan. 365, 273 Pac. 661; *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 276 P. 2d 350; *Brungardt v. Smith,* 178 Kan. 629, 636, 290 P. 2d 1039; *Weiner v. Wilshire Oil Co.,* supra.)

Appellant insists the purpose of the contract is to limit the right of sale and the court erred in finding the contract assumed the

inherent right to sell. It would have been a simple matter for the parties to have included in the contract a general statement that all sales of stock by the parties were prohibited for the term specified unless specifically authorized by the agreement, if this was the understanding. A right of sale is an incident to the ownership of property. If the right of sale is restricted or prohibited by agreement a restraint on alienation is imposed. Restraints on alienation of property are strictly construed by the courts against the party urging the restriction. (42 Am. Jur. Property § 52; *Tracey v. Franklin,* 31 Del. Ch. 477, 67 A. 2d 56, 11 A. L. R. 2d 990.)

A lease constitutes property and restrictions against assignment of a lease constitute prohibitions against the right of alienation and are strictly construed. They will not be extended by implication. (*Williams v. Safeway Stores, Inc.,* 198 Kan. 331, 424 P. 2d 541.)

Strict construction in such cases is imposed against the restriction and against the party asserting it. In the present case imposition of this rule of strict construction would tend to permit the sale of stock by plaintiff if not expressly prohibited by the contract.

However, the defendant in his brief argues the contract should be strictly construed against the plaintiff. He says since plaintiff is an attorney and prepared the contract any doubtful language must be resolved against plaintiff. The plaintiff in his brief denies authorship of the contract. The record before us does not disclose who drew the agreement. The question becomes immaterial by our decision that the language is not doubtful and the contract is not ambiguous. It was not a genuine issue of material fact in the trial court. Therefore, we cannot accept the appellant's argument and authorities on this particular point as applied to the present case.

The crux of the matter is appellant wants us to imply and insert a restriction in this contract against the sale, which restriction he admits was not expressed therein. This court may not make a new contract for the parties or rewrite a contract under the guise of construction. Construction of a contract does not authorize modification beyond the meaning expressed by the language employed by the parties. (*Snyder v. Miller,* 71 Kan. 410, 418, 80 Pac. 970; *Bailey v. Talbert,* 179 Kan. 169, 294 P. 2d 220; *Anderson v. Rexroad,* 180 Kan. 505, 306 P. 2d 137; 17 Am. Jur. 2d, Contracts § 242.)

When the terms of the contract are plain and unambiguous the meaning must be determined by its contents alone and words cannot be read into the agreement which import an intent wholly

unexpressed when it was executed. (*Williams v. Safeway Stores, Inc.*, supra; 17A C. J. S. Contracts § 321; 17 Am. Jur. 2d, Contracts § 261.)

The lower court correctly construed the contract and found no provision therein which prohibited the sale by plaintiff in the manner in which it was made to Blakemore. The court properly declined to read into the contract an implied restriction against sale which would have had the effect of making a different contract for the parties.

The judgment is affirmed.