No. 49,842

In the Matter of the Estate of DOROTHY W. MURPHY, Deceased

(601 P.2d 1096)

Opin-
ion filed October 27, 1979.

*Robert W. Green,* of Ottawa, argued the cause and was on the brief for appellant.

*Richard O. Skoog,* of Skoog & Latimer, of Ottawa, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal from an order of the district court denying a claim filed by Donald M. Parks against the estate of Dorothy W. Murphy, deceased. The claim of Parks was based upon a property settlement agreement entered into by Donald M. Parks and Dorothy W. Parks (subsequently Murphy) at the time of their divorce in 1975.

Most of the factual background was not disputed. Donald M. Parks and his wife, Dorothy W. Parks, were the principal stockholders of Grand Builders, Inc., a corporation engaged in the business of erecting pole barns and buildings in Missouri. Dorothy managed the office, with assistance from Lowell Murphy, while Donald took care of the construction phase of the business.

In 1974, the marriage of Donald and Dorothy began to deteriorate and eventually led to divorce. A property settlement agreement dated March 17, 1975, was entered into by the parties and was subsequently approved by the Circuit Court of Livingston County, Missouri, at the time the divorce was granted. Dorothy moved to Kansas, married Lowell Murphy and they went into the pole barn and building business in Kansas. Dorothy died testate, a resident of Franklin County, Kansas, on August 23, 1976, and Murphy was appointed executor under her will. The claim filed by Donald was based upon the divorce settlement agreement and the question before the court concerns the ambiguity, or lack thereof, of that agreement.

The agreement will be summarized and set out in some detail, omitting formal parts. Donald M. Parks was the First Party in the agreement and Dorothy W. Parks was the Second Party.

Paragraph 1 provided in subparagraph A that Dorothy would receive $300,000.00 in cash; subparagraphs C through M gave her other items of specific miscellaneous personal property. Subparagraph B provided she would receive one-half of all materials listed on Exhibit "A" to the agreement. These materials were used in the business of Grand Builders, Inc., and were to have a value of at least $60,000.00.

Paragraph 2 provided that Donald was to receive all the corporate stock of Grand Builders, Inc., real estate belonging to the corporation, certain vehicles and equipment used in the business, all proceeds of the business of Grand Builders, Inc., all corporate business records and books and other items of personal property, including furniture and household goods.

Paragraphs 3 through 9 read as follows:

"3. First Party assumes all bills, accounts, liabilities, taxes, including anticipated income taxes (including such anticipated income taxes for 1973).

"4. Second Party shall have the use, without charge of one truck tractor and semi-trailer and an additional tag axle truck, with the regular drivers, for moving her property and 30 days within which to move.

"5. Second Party shall pay one-half of all unanticipated income taxes which may be finally assessed, for the period of the marriage of these parties.

"6. This agreement shall be subject to and contingent upon the First Party being able to procure a loan upon the corporate assets, in a principal sum of at least $300,000.00, and, if, after diligent efforts and cooperation upon the part of the First Party, he should be unable to obtain such loan, then this Agreement shall be null and void, and of no further force or effect. First Party shall promptly notify Second Party or her Attorney of approval or disapproval of such loan.

"7. Second Party agrees to convey by Quit-claim Deed to First Party, all of her right, title and interest in all of the real estate presently owned, by First and Second Parties including the house where First Party presently resides and certain Lake Viking property located in Daviess County, Missouri.

"8. First Party shall be responsible for and shall pay the fee of the accountant, Carl Wright, and shall hold Second Party harmless therefrom.

"9. The materials referred to in paragraph 1B, above, shall not exceed a total original cost price of $127,000.00, nor be less than an original cost price of $120,000.00."

The claim of Donald against Dorothy's estate is based upon paragraph 5 of the agreement. It appears that the materials received by Dorothy described in 1B were corporate assets belonging to Grand Builders, Inc. The Internal Revenue Service, when

it learned of this particular distribution, took a dim view of the proceedings and assessed Donald with a tax deficiency based upon a $60,000.00 constructive dividend from the corporation. It was the position of the service that Donald had used corporate assets to settle a personal obligation due Dorothy under the divorce agreement and therefore had received a constructive dividend from Grand Builders, Inc. equal to the value of the "materials" received by Dorothy under paragraph 1B. There were other income tax deficiencies assessed against Donald and Grand Builders, Inc., which were included in his claim against the estate. A hearing was held on the claim and it was denied in its entirety by the district court. Appellant's motion for a new trial was heard and overruled.

Appellant's main issue on appeal is that the trial court erred when it found the property settlement agreement unambiguous and therefore excluded parol evidence tending to explain the intent of the parties to the agreement.

The clause of the agreement which the claimant argues is ambiguous is paragraph 5.

Through two offers of proof appellant asserted that during the negotiations leading to the property settlement agreement, it was agreed by Donald and Dorothy that all unanticipated *corporate* and *personal* income taxes were included in the agreement.

Appellant also asserted that subsequent to the divorce amended returns were prepared by the accountant for the corporation, reflecting additional tax liability not previously reported to the Internal Revenue Service and that this liability was known to both parties and contemplated by them when they entered into the agreement. Appellant also argued to the trial court and asserts on appeal that Grand Builders, Inc. was, and had been for several years, the alter ego of Donald and Dorothy and parol evidence should have been allowed to prove this point. Appellant appears to contend that neither party could have anticipated the deficiency based upon the $60,000.00 constructive dividend to Donald and therefore it was an unanticipated item under paragraph 5.

The law in Kansas pertaining to the use of parol evidence in contract disputes was recently summarized in *Quenzer v. Quenzer,* 225 Kan. 83, 587 P.2d 880 (1978), when the court stated:

"Whether ambiguity exists in an instrument is a matter of law to be decided by the court. *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, 839, 508 P.2d 889 (1973). This

court, however, may not rewrite a contract or make a new contract for the parties under the guise of construction. *Wood v. Hatcher,* 199 Kan. 238, 428 P.2d 799 (1967). Words cannot be written into a contract which import an intent wholly unexpressed when it was executed. *Duffin v. Patrick,* 212 Kan. 772, 778, 512 P.2d 442 (1973).

"Ambiguity is defined in *Wood v. Hatcher,* 199 Kan. at 242, where the court said:

'The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings. . . .'

See *Mobile Acres, Inc. v. Kurata,* 211 Kan. at 838; *Mays v. Middle Iowa Realty Corp.,* 202 Kan. 712, 718, 452 P.2d 279 (1969).

"If a contract is not ambiguous it must be enforced according to its terms, for the law presumes the parties understood their contract and that they had the intention which its terms import. *Tri-State Hotel Co., Inc. v. Sphinx Investment Co., Inc.,* 212 Kan. 234, 246, 510 P.2d 1223 (1973); *Schnug v. Schnug,* 203 Kan. 380, 383, 454 P.2d 474 (1969). As a general rule, when a contract is complete and unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible. *Hird v. Williams,* 224 Kan. 14, 15, 577 P.2d 1173 (1978)." p. 85.

In determining whether a contract is ambiguous, one must look to the contract as a whole to attempt to determine the intent of the parties. *Wood v. Hatcher,* 199 Kan. 238, 241, 428 P.2d 799 (1967). To help interpret contracts that are ambiguous, this court has adopted several general rules of construction. The cardinal rule in the construction of an ambiguous contract is to ascertain the intention of the parties and to give effect to that intention. *Springer v. Litsey,* 185 Kan. 531, 345 P.2d 669 (1959). If the court finds that the contract is unambiguous, the intent of the parties should be determined from a consideration of the instrument itself in its entirety. *Brungardt v. Smith,* 178 Kan. 629, 290 P.2d 1039 (1955). If, however, the court finds the language of a contract to be ambiguous, the facts and circumstances surrounding the execution of the contract should be considered in determining which one of two or more meanings was intended. 17 Am. Jur. 2d, Contracts § 242, p. 627; *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, 839, 508 P.2d 889 (1973); *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 276 P.2d 350 (1954).

With the foregoing basic principles in mind, is the Parks divorce agreement, when viewed in its entirety, ambiguous? We think so. Unfortunately, the record made in this case and the briefs of the parties are of little help to this court.

It is apparent from the agreement that Donald and Dorothy dealt with the property of Grand Builders, Inc. as if it was their own personal property. This was one of the factors that led to their corporate and personal tax problems. It appears to be agreed that the materials Dorothy was to receive under paragraph 1B were corporate property and that other specific items which were to be Dorothy's were also corporate assets. Similarly, under paragraph 2 Donald received certain corporate assets as his separate property. Paragraph 6 of the agreement provides that Donald will secure a $300,000.00 loan upon the corporate assets in order that he can make the cash payment to Dorothy. While these provisions are confusing enough, paragraphs 3 and 5 of the agreement, without some further explanation, defy interpretation. Paragraph 3 provides that Donald will pay, among other things, all *anticipated income taxes* while paragraph 5 provides the parties will share all *unanticipated income taxes.* The anticipated income taxes referred to in paragraph 3 specifically mention the year 1973. However, evidence at trial shows an overpayment by Donald and Dorothy for that year but a substantial deficiency for the corporation. Does paragraph 3 mean that the unpaid corporate tax was an anticipated tax? Appellant argues on one hand that the parties knew they had underreported the corporate income for years prior to 1975, which would seem to imply the additional corporate tax, if contemplated by the agreement at all, would fall under paragraph 3 as an anticipated tax, yet he attempts to include it under paragraph 5. Again, the constructive dividend to Donald was assessed for the year 1975, and the tax consequences of using corporate property to pay a personal obligation could readily have been anticipated, yet Donald claims that item should fall under paragraph 5 as "unanticipated income taxes which may be finally assessed for the period of the marriage of these parties." Was the dividend incurred during the period of the marriage? Was it unanticipated? Was the corporation the alter ego of Donald and Dorothy? Should all corporate income taxes be considered as falling within the terms of the agreement, either as anticipated income taxes under paragraph 3 or as unanticipated income taxes under paragraph 5? We cannot determine the answers to these questions, and others that could be posed, by reference to the agreement and we do not attempt to make any such determinations. These are factual matters to be determined by the trial

court. No attempt was made in the agreement to specify what was anticipated and without some further explanation, no one could ascertain the meaning of these provisions or the liability of one party to the other.

Parol evidence should have been allowed to explain the claim of Donald, which was based upon what he alleges were unanticipated personal income taxes contemplated by paragraph 5 and unanticipated corporate income taxes based upon the premise that the corporation was the alter ego of the parties and therefore was also intended to be covered by paragraph 5.

In view of the foregoing, it is not necessary to consider further the other points asserted on appeal. However, as the case must be remanded for a new trial, one point does merit some comment. An issue was raised in the trial court about the necessity of Donald proving his claim with particularity. The burden of proof of a claim against an estate rests upon the claimant. We held in *In re Estate of Brown*, 189 Kan. 193, 368 P.2d 27 (1962), in Syl. ¶ 4:

"The burden of proving a claim against a decedent's estate is on the claimant and the claim must be established by evidence clear and convincing to the triers, or trier, of the facts."

See also *In re Estate of House*, 164 Kan. 610, 192 P.2d 179 (1948).

The decision of the trial court is reversed and the case remanded for a new trial in accordance with the views set forth above.

FROMME, J., not participating.