(775 P.2d 675)

No. 62,869

NEA-GOODLAND and CHERYL MICKEY, *Appellants,* v. BOARD OF EDUCATION, U.S.D. No. 352, SHERMAN COUNTY, KANSAS, *Appellee.*

Petition for review denied September 29, 1989.

Opinion filed June 9, 1989.

*Thomas L. Toepfer,* of Hays, for appellants.

*J. Ronald Vignery,* of Goodland, for appellee.

*William H. Dye,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for *amicus curiae* Board of Education, U.S.D. No. 259, Sedgwick County, Kansas.

Before ABBOTT, C.J., BRISCOE and BRAZIL, JJ.

BRAZIL, J.: NEA-Goodland and Cheryl Mickey appeal from a Sherman County District Court ruling (1) that noon hallway duty and noon recess duty are incidental to the teacher's primary contract and may be assigned arbitrarily by the school district and (2) that the 1987-88 negotiated agreement between NEA-

Goodland and U.S.D. No. 352 relates solely to lunchroom duties. We affirm.

The lunch break at Central Elementary consists of a twenty-minute period in which the children eat followed by twenty minutes of noon recess. In June 1987, Mickey wrote the principal of Central Elementary to inform him that she did not want to participate in lunchroom duty or noon playground duty during the 1987-88 school year. The principal responded by acknowledging her withdrawal from lunchroom duty. Additionally, the principal informed Mickey that noon recess duty was not voluntary and that she would continue to be so assigned. Eventually, Mickey filed a grievance report against the principal. The superintendent of U.S.D. No. 352 determined that Mickey's assignment to noon recess duty did not violate Article 15 of the 1987-88 negotiated agreement.

NEA-Goodland and Mickey filed a petition in district court for declaratory judgment and injunctive relief alleging that the mandatory noon recess supervision violates Article 15 of the 1987-88 negotiated agreement and that noon hallway and playground supervision are supplemental duties under K.S.A. 72-5412a. The district court determined that noon recess duty and noon hallway duty do not fit within the definition of supplemental contracts set out in K.S.A. 72-5413(o). The district court concluded that the 1987-88 negotiated agreement permits teachers to elect not to perform lunchroom duties, but that noon recess duty and noon hallway supervision can be assigned by the district involuntarily as part of each teacher's primary contract.

Primary versus supplemental duties.

NEA-Goodland and Mickey allege that noon hallway and playground supervision are supplemental duties because those duties include "supervising" under K.S.A. 72-5412a. The statute provides in relevant part:

"The board of education of any school district may enter into a supplemental contract of employment with any employee of the district. As used in this section 'supplemental contract' means a contract for services other than those services covered in the principal or primary contract of employment of such employee, and shall include but not be limited to such services as coaching, supervising, directing and assisting extra curricular activities, chaperoning, ticket taking, lunch room supervision and other similar and related activities."

K.S.A. 72-5413(o) defines "supplemental contracts" in the following manner:

" 'Supplemental contracts' means contracts for employment duties other than those services covered in the principal or primary contract of employment of the professional employee, and shall include but not be limited to such services as coaching, supervising, directing and assisting extra curricular activities, chaperoning, ticket taking, lunchroom supervision, and other similar and related activities."

In *Swager v. Board of Education, U.S.D. No. 412*, 9 Kan. App. 2d 648, Syl. ¶ 2, 688 P.2d 270, *rev. denied* 236 Kan. 877 (1984), this court said that the mandatory language of K.S.A. 72-5412a "is a clear expression of a legislative intent to prohibit school districts from making supplemental duties, such as coaching, part of a teacher's primary contract." In *Hachiya v. U.S.D. No. 307*, 242 Kan. 572, 750 P.2d 383 (1988), the Supreme Court held that a school district may not make coaching part of a teacher's primary contract, even when the coaching is conducted during the school day. The rationale of this rule is to prevent school districts from compelling or coercing a teacher into accepting supplemental duties. 242 Kan. at 578. In *Hachiya*, the court rejected the school district's argument that "coaching" as used in 72-5412a is modified by "extracurricular activities" and that therefore coaching activities which occurred during the school day need not be covered by a supplemental contract. The court said:

"A plain reading of the statute indicates that the term 'extracurricular activities' modifies only the preceding terms 'directing and assisting' and does not modify the term 'coaching.' This interpretation is supported by the rule of the last antecedent, which has been recognized repeatedly in this state.

" ' " . . . In construing statutes, qualifying words, phrases and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding. The last antecedent, within the meaning of this rule, has been regarded as the last word [or clause] which can be made an antecedent without impairing the meaning of the sentence.' " *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 190-91, 519 P.2d 661 (1974) (quoting *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 504, 438 P.2d 732 [1968]).

See *Liberty Life Ins. Co. v. Guthrie*, 148 Kan. 907, 909, 84 P.2d 891 (1938). Under this rule of statutory construction, the modifying phrase 'extracurricular activities' clearly modifies only the terms 'directing and assisting' and does not modify the more remote term 'coaching.' Under the unambiguous wording of the statute, coaching activities, whether occurring before, during, or after the school day, must be governed by a supplemental contract." 242 Kan. at 580.

The court in *Hachiya* did not interpret the word "supervising" as used in K.S.A. 72-5412a. Supervise is defined as "to oversee, direct, or manage." Webster's New World Dictionary 1430 (2d Coll. ed. 1980). Supervising can be distinguished from coaching

in that coaching is not an integral part of a teacher's primary duties while supervising is entwined with a teacher's duty to educate.

"A school teacher, to a limited extent at least, stands in loco parentis to pupils under his charge and may exercise such powers of control, restraint, and correction as may be reasonably necessary to enable him properly to perform his duties as a teacher and to accomplish the purposes of education." 68 Am. Jur. 2d, Schools § 256, p. 584.

Especially at the elementary level, teachers are charged with supervising the children as they enter and exit the classroom, as they move to and from art or music classes, and during any noninstructional time, such as when the children are being tested or working individually.

In view of the broad meaning of supervising, the legislature could not have intended the word "supervising" in K.S.A. 72-5412a to mean that every act of supervision by a teacher over a student requires a supplemental contract. Supervising is nearly indistinguishable from directing and assisting and should be interpreted as being modified by the phrase "extracurricular activities" in the same manner as directing and assisting are modified by the phrase.

The rules of statutory construction support this interpretation. The United States Supreme Court has held: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry. Co. v. Mor*, 253 U.S. 345, 348, 64 L. Ed. 944, 40 S. Ct. 516 (1920). In *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 504, 438 P.2d 732 (1968), the court reiterated the rule of the last antecedent and noted that the rule is not inflexible. In the Nebraska case of *In re Petition of School District of Omaha*, 151 Neb. 304, 37 N.W.2d 209 (1949), the court discussed the situations in which exceptions should be taken to the doctrine of the last antecedent clause.

" 'It may be admitted that, as a general rule of grammatical construction, relative words must ordinarily find their antecedents in the next preceding word or words to which they may refer; but this rule is subject to the exception that, if such construction would involve an absurdity, do violence to the plain intent of the language, or if the context for other reason requires a deviation from the rule, it will be necessary and proper to look for another antecedent.' " 151 Neb. at 307-08.

The phrase "extracurricular activities" as used in K.S.A. 72-5412a modifies the term "supervising." Any supervising of children participating in extracurricular activities must be governed by a supplemental contract. Any supervising which is entwined with the duty of educating should be considered a part of the teacher's primary teaching obligation. Noon recess duty is intricately related to the education process and as such is controlled by the teacher's primary contract.

### The 1987-88 negotiated agreement.

Appellants argue that the district court erred in finding that Article 15 of the 1987-88 negotiated agreement applied solely to lunchroom duties which teachers could elect not to perform, but that noon recess and noon hallway duty were part of the primary teaching contract of each teacher.

Article 15 of the 1987-88 negotiated agreement is as follows:

"Each building principal shall develop a rotating schedule for volunteers for assignments for supervising during lunch period and the principal shall have the right to change the assignments from time to time. Assignments shall include supervision of the lunchroom. The number of teachers required for lunchduty shall be determined by the principal. Teachers on lunchduty assignment shall receive a free lunch. All teachers not on lunchroom assignment shall have a duty-free lunch."

This court can review the negotiated agreement and decide its legal effect. Regardless of the construction the district court gave the agreement, this court may independently construe the contract and determine its legal significance. *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 713, 732 P.2d 741 (1987).

In construing Article 15 of the 1987-88 negotiated agreement, we consider the following rules which govern contract interpretation. If a contract is unambiguous, the contract should be enforced according to its terms. *Fast v. Kahan,* 206 Kan. 682, 684, 481 P.2d 958 (1971). Language in a contract is ambiguous if the words in the contract are subject to two or more possible meanings. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, Syl. ¶ 3, 754 P.2d 803 (1988). In this case, the negotiated agreement states that teachers may volunteer to supervise "during lunch period." It can be argued that the term "lunch period" is ambiguous because it could be understood to mean only the time the children are eating or to mean the entire forty-minute period in which the children eat and participate in noon recess.

If a contract is ambiguous, the intention of the parties, if ascertainable, should be given effect. The circumstances surrounding the execution of the contract may be considered in determining the intent of the parties. *In re Estate of Murphy*, 226 Kan. 424, 427, 601 P.2d 1096 (1979).

The superintendent of U.S.D. No. 352 at the time the lunch duty provision was adopted testified that the intent of the provision was to make lunchroom duty voluntary but playground and hallway duty assignable. The current U.S.D. No. 352 superintendent testified that "lunch duty" referred only to lunchroom supervision. However, for the period of time ranging from October 1986 through May 1987, both lunchroom duty and noon playground duty were voluntary because of the school board's uncertainty of the law governing supplemental contracts. Mickey testified that she believed noon playground supervision remained voluntary. Another teacher agreed with Mickey's interpretation that the provision in question makes noon playground supervision voluntary.

From viewing the parol evidence, it appears that the U.S.D. No. 352 Board of Education intended that lunchroom supervision be voluntary while noon recess and noon hall duty remained assignable under the teachers' primary contracts. NEA-Goodland and Mickey desired a completely voluntary noon hour. The superintendent's interpretation of the negotiated agreement should be given effect. That interpretation is in accordance with K.S.A. 72-5412a and the intent of the U.S.D. No. 352 Board of Education.

Affirmed.