**Dorothy L. WHITE, Plaintiff,**

v.

**HEALTH MIDWEST DEVELOPMENT GROUP d/b/a Allen County Hospital, Defendant.**

**No. 94–4060–RDR.**

United States District Court, D. Kansas.

June 14, 1995.

---

Charles H. Apt, III, Apt & Apt, Iola, KS, Michael E. Francis, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for plaintiff Dorothy L. White.

James P. O'Hara, Shughart, Thomson & Kilroy, Overland Park, KS, Christopher F. Pickering, Thomas G. Kokoruda, Shughart, Thomson & Kilroy, Kansas City, MO, for defendants Health Midwest, Health Midwest Development Group aka Allen County Hosp.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This is a breach of contract action based upon diversity jurisdiction. Plaintiff is a former employee at Allen County Hospital (ACH). The defendant is the operator of ACH. Plaintiff contends that the defendant breached a written contract of employment when the defendant terminated her on October 12, 1993. The parties have submitted an agreed statement of facts and briefs in support of their legal positions. The court has heard additional evidence and is now prepared to issue findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff, Dorothy L. White, began employment with ACH in 1977 as secretary to the Administrator. She soon assumed the position of Executive Secretary not long after she was hired. She later also assumed the position of Director of Marketing and Public Relations.

2. In the fall of 1992, Ronald Ommen, the Senior Vice–President of the defendant, had some concerns about how plaintiff was performing her responsibilities as Director of Marketing and Public Relations. On December 11, 1992, plaintiff was terminated from her positions as Executive Secretary and Director of Marketing and Public Relations with the approval of Mr. Ommen.

3. Following her termination, plaintiff contacted an attorney, Charles H. Apt, III. Mr. Apt entered into negotiations with Gina Kaiser, the Vice–President for Legal Services with the defendant, concerning plaintiff's termination. An agreement was subsequently reached on May 21, 1993, which provided for plaintiff's reinstatement to employment at ACH as Executive Secretary.

4. The agreement was drafted by Ms. Kaiser with changes made pursuant to correspondence and telephone calls between Ms. Kaiser and Mr. Apt.

5. Pursuant to the agreement, plaintiff agreed to release the defendant "from any and all claims by [plaintiff] ... that arise out of [plaintiff's] termination by Allen County Hospital on December 11, 1992, including but

not limited to all claims for race, sex, or age discrimination under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and all other federal and state statutes and common law doctrines." The defendant agreed to (1) pay plaintiff the amount of salary she would have earned between December 11, 1992 and May 24, 1993; (2) change her employment records so that no break in service is shown and to remove any reference to her termination; (3) provide fringe benefits as if she had been continuously employed by defendant; and (4) pay plaintiff for health insurance premiums she paid while unemployed. The agreement further provided as follows:

> [The defendant] agrees to reinstate [plaintiff] on May 24, 1993, and further agrees that [plaintiff] will perform the duties of Executive Secretary to the Hospital Administrator. She will have no responsibility for marketing and/or public relations.

6. Prior to the time the agreement was executed by the parties, there was no discussion between the lawyers concerning the meaning of the phrase "no responsibility for marketing and/or public relations." Approximately two months before the agreement was executed, Ms. Kaiser sent Mr. Apt a letter which set forth a proposal whereby plaintiff would be reinstated to her former position of Executive Secretary at her former pay. Ms. Kaiser advised that plaintiff "will no longer be responsible for Public Relations." The suggestion that plaintiff not be responsible for public relations was first raised by Mr. Ommen. In addition to other correspondence by the parties' attorneys about the terms of the settlement and reinstatement, Mr. Apt wrote Ms. Kaiser on May 7, 1993 concerning the terms and conditions of plaintiff's re-employment and stated that the following condition was necessary:

> That she will be reinstated with the title Executive Secretary and that her marketing responsibilities have been totally eliminated.

7. Plaintiff returned to work pursuant to the aforementioned agreement on May 24, 1995. She assumed the position of Executive Secretary to the Administrator.

8. Upon her return to work, plaintiff met with Roger Pearson, the ACH Executive Director. Mr. Ommen, Mr. Pearson's superior, also attended. During this meeting, plaintiff was presented with the written job description for the position of Executive Secretary. The job description was modified during the course of the meeting. These modifications provided that plaintiff would no longer (1) have any other secretarial employees under her supervision; (2) take the minutes of the meetings of the ACH Board of Directors; or (3) take the minutes of meetings of ACH department directors' Executive Council meetings. In all other respects, it was established that plaintiff's duties would be as set out in the written job description.

9. The three-page written job description for the position of Executive Secretary at ACH provides in the "Work Performed" section in pertinent part as follows:

> 1. Performs secretarial and general office duties. Specific duties may vary.
>
> .     .     .     .     .
>
> 3. Types a variety of materials for the Executive Director and department managers when time permits.
>
> .     .     .     .     .
>
> 9. Assists Executive Director with tasks as requested.
>
> .     .     .     .     .
>
> 31. Performs other related duties as assigned.

10. Plaintiff was aware of the written job description and understood it as of the May 24, 1993 reinstatement meeting with Messrs. Ommen and Pearson.

11. During the period from May 24, 1993 to October 12, 1993, plaintiff accepted secretarial assignments or projects at various times at the direction of: Mr. Pearson; JoAnn Thomas, Director of Patient Care and later on-site officer in charge; Jana Manning, Director of Marketing and Public Relations and Director of Human Resources; Larry Peterson, Chief Financial Officer; Donna Bauer, Assistant Director of Financial Services; Lucille Hillbrant, Quality Assurance Coordinator and Infection Control Nurse; and a man named Lloyd in Environ-

mental Services. All of these individuals worked at ACH at the department manager level or above. These assignments generally came to plaintiff directly.

12. Plaintiff was not the only secretary at ACH who did secretarial work. Vicky Garver and Connie Ferris also accepted such assignments. The secretarial duties requested from plaintiff after May 24, 1993 were no different than the assignments handled by the other secretaries.

13. Plaintiff was asked several times between May and October 1993 to type some documents relating to public relations and/or marketing functions at ACH. Plaintiff acknowledges that during this period she was never asked to compose a document related to marketing or public relations. Nor was she ever asked to assume responsibility for designing or taking managerial responsibility for a marketing or public relations program. Instead, plaintiff was merely asked to type certain documents, mainly letters, that had already been composed by other employees who had responsibility for public relations matters at ACH. Plaintiff did type several documents during this period that were related to public relations. However, she refused to type other documents that she believed were related to marketing and public relations.

14. On or about October 6 or 7, 1993, plaintiff was asked by Ms. Manning or Ms. Thomas to type pre-written letters authored by others that had come to her through the Public Relations Department. Plaintiff, after consulting with Mr. Apt about the subject, took the position that she was not required to perform those duties under the terms of the May 1993 agreement. Plaintiff informed the staff at ACH that her attorney believed that she was not permitted under the terms of the agreement to perform the work that was requested by the hospital. Representatives of the hospital did not immediately press the issue and tell plaintiff that she would either have to do the work or she would be terminated.

15. On the morning of October 12, 1993, Ms. Kaiser sent a letter to Mr. Apt concerning the employment relationship between plaintiff and defendant. The letter specifical-

ly warned plaintiff and Mr. Apt that if plaintiff persisted in her refusal to assist with such tasks as typing letters and stuffing envelopes from time to time on an "overload" basis for the hospital's Public Relations Department, then such refusal "will result in discipline, up to and including termination." After receiving the letter, Mr. Apt discussed it with plaintiff by telephone, summarizing portions of it and reading other portions to her. Thereafter, Mr. Apt had a telephone conversation with Ms. Kaiser. During that conversation, he told Ms. Kaiser that he believed that what was being requested of plaintiff by defendant was contrary to the agreement. He also told Ms. Kaiser that he believed the topics that were addressed in Ms. Kaiser's letter were not the only things that the defendant was requiring of plaintiff. Mr. Apt told Ms. Kaiser that he believed Ms. Kaiser needed to look into that to see specifically what the hospital was requesting that plaintiff do. Ms. Kaiser indicated that she would talk with her client and get back to him. Ms. Kaiser did not talk again with Mr. Apt because she conferred with her individuals at the hospital and determined that the facts were not different than what she had set forth in the letter, so there was nothing else she needed to discuss with him. Mr. Apt did not telephone plaintiff about his conversation with Ms. Kaiser because he felt that his discussion with Ms. Kaiser did not provide any additional information beyond what Mr. Apt and plaintiff had discussed just before his discussion with Ms. Kaiser.

16. At approximately 4:45 p.m. on October 12, plaintiff met with Ms. Thomas and Ms. Manning. During that meeting, plaintiff was given a memorandum authored by Mr. Ommen concerning her job duties. This memorandum provided as follows:

It is not acceptable to Administration that you relieve yourself of clerical duties that may be needed for any department of this Hospital, including Public Relations and Communications. It is our expectation that you will accept responsibility with the other Administrative Secretary in making sure that these functions are carried out in full and in a timely fashion.

It is not our intent to have you create documents or communications. It is our intent that upon request, you provide transcription, typing, filing, mailing and envelope addressing and stuffing functions relative to Public Relations/Communications and other departments. It is further expected that this will be shared among both secretaries and is not solely your responsibility. As part of your duties as Executive Secretary to the Hospital Administrator, you are expected to accept assignments from persons who report to him, including the Director of Nursing, or the Director of Communications, and that these will receive appropriate priority when they are assigned to you.

We would like to repeat that we are not assigning you any department director level responsibility for these functions. We are not expecting you to accept responsibility for any function which is not also expected of the other Administrative Secretary and which is not a secretarial function. Further refusal to perform these requested duties will result in termination.

17. After reading Mr. Ommen's memorandum, plaintiff reiterated that she could not agree to type documents related to marketing and/or public relations unless and until she talked to her attorney, because she believed that such assignments violated the May 1993 agreement. Ms. Manning and Ms. Thomas informed the plaintiff that any further discussion with her attorney at this time was not an option. Prior to the meeting with plaintiff, Ms. Manning had discussed with Mr. Ommen the prospect that plaintiff may again ask to see a lawyer. It was decided that since plaintiff had already been given an opportunity to consult with her attorney the week before, defendant did not care whether plaintiff saw her attorney. Mr. Ommen was only concerned with whether plaintiff would agree to do the clerical work that she was required to do.

18. During the meeting with plaintiff, Ms. Manning and Ms. Thomas did not insist that plaintiff actually perform the assigned secretarial duties before talking to her attorney. Instead, Ms. Manning and Ms. Thomas, at the direction of Mr. Ommen, simply insisted that plaintiff at least acknowledge that she would agree to perform the aforementioned tasks when asked to do so.

19. Plaintiff made the following notation on the memorandum during the meeting: "Refused to make a decision until I have an opportunity to talk with my attorney. Was not given that option." At the conclusion of the meeting, Ms. Thomas and Ms. Manning terminated plaintiff from her employment with the defendant. Prior to the meeting, Ms. Thomas and Ms. Manning had conferred with Mr. Ommen and reviewed two scenarios: (1) if plaintiff indicated that she was willing to do the work, then the hospital would make the assignment; and (2) if she indicated she did not want to complete the work, then she would be fired forthwith.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over this action based upon diversity of citizenship. 28 U.S.C. § 1332.

2. The law of the State of Kansas governs the breach of contract claim in this case. *Frasher v. Life Investors Insurance Co. of America*, 14 Kan.App.2d 583, 796 P.2d 1069, 1071 (1990).

3. The position of the plaintiff is that the portion of the agreement which provided that plaintiff would have "no responsibility for marketing and/or public relations" is ambiguous. Plaintiff believes that parol evidence supports her contention that the agreement proscribed her from performing any secretarial tasks for the hospital's Marketing and Public Relations Department. Accordingly, plaintiff contends that the defendant breached the contract by terminating her when she refused to agree to perform such work. Plaintiff also contends that the defendant illegally prevented her from contacting her attorney prior to deciding whether certain tasks were within the terms of an employment agreement between the parties. The defendant contends that the contract phrase "no responsibility for marketing and/or public relations" is unambiguous. The defendant asserts that the reasonable interpretation of this term is that plaintiff would have no managerial or creative responsibility for marketing or public relations activities at the

hospital. This term did not, the defendant argues, preclude the defendant from assigning secretarial tasks from the hospital's marketing and public relations department. The defendant also contends that it was under no legal obligation to provide the plaintiff with the opportunity to consult with an attorney prior to plaintiff performing any requested task or prior to deciding whether to perform any requested task.

4. The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention if the intention is consistent with legal principles. *Hollenbeck v. Household Bank,* 250 Kan. 747, 829 P.2d 903, 906 (1992). The meaning of a contract and the intent of the parties are to be deduced by the court from the instrument itself, as long as its terms are plain and unambiguous. *Id.* The determination of whether contract language is ambiguous is a question of law to be decided by the court. *Kennedy & Mitchell, Inc. v. Anadarko Production Co.,* 243 Kan. 130, 754 P.2d 803, 806 (1988). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one or two or more meanings is the proper meaning." *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456, 459 (1992). In determining whether a contract is ambiguous, the court must look to the contract as a whole to attempt to determine the intent of the parties. *Matter of Estate of Murphy,* 226 Kan. 424, 601 P.2d 1096, 1099 (1979). "In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided." *Arnold v. S.J.L. of Kansas Corp.,* 249 Kan. 746, 822 P.2d 64, 67 (1991) (quoting *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, 519 P.2d 646, 649 (1974)). A contract that is not ambiguous must be enforced according to its terms, for the law presumes the parties understood

their contract and that they had the intention which its terms import. *Tri–State Hotel Co., Inc. v. Sphinx Investment Co., Inc.,* 212 Kan. 234, 510 P.2d 1223, 1233 (1973). As a general rule, when a contract is complete and unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing are inadmissible. *Hird v. Williams,* 224 Kan. 14, 577 P.2d 1173, 1174 (1978).

5. The key terms in the instant contract are: "[ACH] agrees to reinstate [plaintiff] on May 24, 1993, and further agrees that [plaintiff] will perform the duties of Executive Secretary to the Hospital Administrator. She will have no responsibility for marketing and/or public relations."

6. Plaintiff has suggested that the "no responsibility" clause is ambiguous. Plaintiff asserts that a review of the agreement fails to reveal whether the term "responsibility" was used with reference to management and direction of marketing and public relations activities, or with reference to responsibilities in addition to direction and management of that department. Plaintiff contends that the parol evidence in this case supports the interpretation that plaintiff had no responsibility for any activities involving marketing or public relations, including secretarial work. The defendant contends that the term is not ambiguous. The defendant argues that the only reasonable interpretation of the pertinent clause is that plaintiff had no managerial or creative responsibility for marketing or public relations activities at the hospital. The defendant asserts that this clause in no way prevented the hospital from having plaintiff perform secretarial tasks involving marketing or public relations activities since the job description for Executive Secretary expressly contemplated such work.

7. In construing the instant contract, the court is convinced that no ambiguity is presented. The natural and reasonable interpretation of the "no responsibility" clause in light of the other terms to the contract is that plaintiff was required to perform all secretarial tasks within the job de-

scription of Executive Secretary, including secretarial tasks arising from marketing and public relations activities. The use of the term "responsibility" in the contract connotes managerial or creative duties involving marketing or public relations activities at the hospital, such as plaintiff had before her initial termination. *See, e.g., Ohio Power Co. v. N.L.R.B.*, 176 F.2d 385, 387 (6th Cir.) ("Responsibility includes judgment, skill, ability, capacity, and integrity, and is implied by power."), *cert. denied*, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949). The suggestion by plaintiff that this term is broad enough to prevent her from typing documents involving marketing or public relations is unreasonable.

8. The record is undisputed that plaintiff was never required or asked to assume managerial or creative responsibility for any marketing or public relations activities at the hospital. Plaintiff was asked only to perform secretarial duties which were within her job description. The failure of plaintiff to perform these tasks or to refuse to agree to perform them constituted sufficient justification for defendant to terminate her. Accordingly, the court finds no breach of the May 1993 employment agreement by the defendant.

9. Plaintiff has also contended that the defendant violated her legal right to confer with an attorney prior to performing a requested task. Plaintiff has provided no legal support for this purported right, and the court has failed to discover any authority for such a proposition. Plaintiff suggested that the right to counsel in criminal cases should be extended to civil cases. We disagree. Even in the public employment context, an employee has no constitutional right to counsel at a pre-termination hearing. *Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir.1990). The creation of such a right would produce impractical results, particularly in a situation where the requested task is neither dangerous nor illegal. Allowing employees the right to consult with an attorney every time they had a doubt about the propriety of an assigned task would substantially hinder an employer's operation. As suggested by the defendant, it would "in effect transfer decision-making power from the [employer] to their employees' attorneys." This is a proposition which this court cannot approve. Plaintiff's remedy in this case, if she believed that the assigned tasks violated the parties' agreement, would have been to perform the tasks and then bring an action against the defendant for declaratory relief.

10. In sum, the court finds for the defendant. The court does not find that the defendant breached the May 1993 agreement by directing plaintiff to perform secretarial duties related to the hospital's marketing and public relations department. The court also does not find that the defendant violated the plaintiff's right to counsel by not allowing plaintiff to confer with her attorney prior to performing the tasks requested by the defendant.

**IT IS THEREFORE ORDERED** that judgment be entered for the defendant and against the plaintiff on all claims.

**IT IS SO ORDERED.**