NOT DESIGNATED FOR PUBLICATION

No. 112,889

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LISA G. LUNDEMO,
*Appellee*,

and

EDWARD L. LUNDEMO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 11, 2015. Affirmed.

*Nicholas L. Oswald*, and *James S. Oswalt*, of Hutchinson, for appellant.

*Thomas A. Dower*, of Gilliland & Hayes, LLC, of Hutchinson, for appellee.

Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.

*Per Curiam*: This appeal concerns the interpretation of a divorce settlement agreement between the parties regarding the termination of spousal maintenance. Lisa Lundemo and Edward Lundemo were divorced on August 17, 2011. One of the conditions for the termination of Edward's maintenance obligation is as follows: "[Lisa] residing with another male to whom she is not otherwise related for a period in excess of thirty (30) days." In denying Edward's motion to terminate maintenance, the trial court ruled that the property settlement agreement failed to define the term "residing with." On appeal, Edward concedes that the term "residing" is not defined in the agreement.

1

Nevertheless, he argues that it should be given its ordinary meaning. We determine that a semantic ambiguity occurred in the use of the term "residing" in the property settlement agreement. Accordingly, we affirm the judgment of the trial court.

Lisa Lundemo and Edward Lundemo were divorced on August 17, 2011. After the divorce, Lisa maintained residential custody of the parties' three children. The parties entered into a settlement agreement which was adopted by the trial court and made a part of the divorce decree. Under the settlement agreement, Edward was required to pay maintenance in the amount of $1,045 per month for 84 months or until the occurrence of one of several events listed in the settlement agreement. The settlement agreement provided that maintenance would terminate upon, among other things, "[Lisa] residing with another male to whom she is not otherwise related for a period in excess of thirty (30) days." Neither the journal entry nor the settlement agreement defined the word "residing."

On July 1, 2014, Edward moved to change residential custody and to terminate maintenance based on the fact that a man, George Foster, had been living with Lisa.

In May or June 2012, Foster, a 20-year-old friend of the parties' son, moved into Lisa's home. Foster lived in the basement and shared food that Lisa had cooked for the rest of the family. Foster paid Lisa $200 per month for rent but did not contribute to utilities. Foster continued to receive mail at his parents' home while living at Lisa's. Foster lived in Lisa's home for over 2 years. He was planning to move out on September 19, 2014, but that plan was postponed.

On October 9, 2014, the trial court held a hearing on Edward's motion. At the hearing, Edward's counsel questioned Lisa about her relationship with Foster and whether he was sharing responsibility with household bills as argued in Edward's motion. Lisa denied having a romantic relationship with Foster and denied any meaningful sharing of

2

expenses related to the household. Foster also stated in his earlier deposition that no romantic relationship existed between him and Lisa. After hearing arguments and testimony, the trial court took the matter under advisement.

On October 16, 2014, the trial court held that it did not believe that the parties intended for Foster's minimal contribution as a tenant to trigger the cessation of maintenance. The trial court noted that maintenance is based on financial need and financial ability. Thus, the court determined that Edward's maintenance obligation should not be terminated but that it should be reduced by $200 each month until his maintenance obligation ends. This reduced maintenance became effective beginning August 1, 2014.

*Did the Trial Court Err in Denying Edward's Motion to Terminate Maintenance?*

In his sole issue on appeal, Edward argues that the trial court erred in denying his motion to terminate maintenance. Edward maintains that under paragraph 11 of the settlement agreement, his maintenance obligation should have ended as a result of Foster living with Lisa for more than 30 days. Edward asks this court to properly terminate his maintenance obligation beginning July 1, 2014, the date he filed his motion.

"Generally, when reviewing a motion to modify maintenance, this court examines the record to determine if there is substantial competent evidence to support the trial court's ruling and whether the trial court abused its discretion. *In re Marriage of Evans,* 37 Kan. App. 2d 803, 804, 157 P.3d 666 (2007). To the extent that this issue involves interpretation of the parties' settlement agreement, it is subject to normal rules regarding contract interpretation which require de novo review. See *Drummond v. Drummond,* 209 Kan. 86, 91, 495 P.2d 994 (1972); *In re Marriage of Hudson,* 39 Kan. App. 2d 417, 426, 182 P.3d 25, *rev. denied* 286 Kan. 1178 (2008); *In re Marriage of Wessling,* 12 Kan. App. 2d 428, 430, 747 P.2d 187 (1987); *In re Marriage of Strieby,* 45 Kan. App. 2d 953, 961, 255 P.3d 34 (2011).

When interpreting written contracts, courts must first ascertain the parties' intent. If the terms of the contract are clear, the parties' intent must be determined from the contract language without applying the rules of construction. *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009). When interpreting a contractual provision, it should not be done by isolating one particular sentence or provision. Courts must construe and consider the entire instrument from its four corners. *City of Arkansas City v. Bruton*, 284 Kan. 815, 832-33, 166 P.3d 992 (2007). "'The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citation omitted.]' [Citation omitted.]" *Wichita Clinic v. Louis*, 39 Kan. App. 2d 848, 853, 185 P.3d 946, *rev. denied* 287 Kan. 769 (2008). The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous. *Dodd v. Dodd*, 210 Kan. 50, 55, 499 P.2d 518 (1972).

The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings. *Mays v. Middle Iowa Realty Corp.,* 202 Kan. 712, 718, 452 P.2d 279 (1969).

> "'If a contract is not ambiguous, it must be enforced according to its terms, for the law presumes the parties understood their contract and that they had the intention which its terms import. [Citation omitted.] . . . .'
>
> ". . . If the court finds that the contract is unambiguous, the intent of the parties should be determined from a consideration of the instrument itself in its entirety."

*In re Estate of Murphy,* 226 Kan. 424, 427, 601 P.2d 1096 (1979). When a contract or agreement is ambiguous, the parties' intentions are ascertained by considering the language employed, the circumstances existing when the agreement was made, the object sought, and other circumstances tending to clarify the parties' real intentions. *Byers v. Snyder*, 44 Kan. App. 2d 380, 386, 237 P.3d 1258 (2010), *rev. denied* 292 Kan. 964

4

(2011) (citing *Amoco Production Co. v. Wilson, Inc.,* 266 Kan. 1084, 1088, 976 P.2d 941 [1999]).

In this case, it is undisputed that Lisa allowed Foster to live with her for more than 30 days. Under the settlement agreement, the parties dispute whether these circumstances qualify as an event which terminates Edward's maintenance obligation.

As stated earlier, the relevant language of the settlement agreement states:

"Respondent shall pay maintenance in the amount of $1,045.00 per month to Petitioner commencing on the first day of the month following the approval by the Court of this property settlement agreement. The maintenance shall terminate upon the first of the following events to occur: . . . (5) [Lisa] residing with another male to whom she is not otherwise related for a period in excess of thirty (30) days."

Edward argues that the trial court erred in interpreting the settlement agreement. Specifically, Edward maintains that under a plain reading of the agreement the necessary elements were established in this case. For example, Edward asserts that Lisa does not dispute that Foster is an unrelated male who resided with her for more than 30 days. Based on these undisputed facts, Edward argues that his maintenance obligation should be terminated.

Edward concedes the fact that the term "residing" is not defined in the agreement. Nevertheless, he argues that it should be given its ordinary meaning. In making this argument, Edward maintains that the term "reside" sets a low bar that simply requires living together. Based on this definition, Edward contends that Foster's occupancy in Lisa's home adequately satisfied the "reside" standard used in the settlement agreement.

Edward further argues that the term "reside" does not require that there be a romantic relationship or joint financial responsibilities which are commonly used to show

cohabitation. Edward asserts that the parties chose not to use the term "cohabitation" in the settlement agreement, so the common law definition for cohabitation should not be applied in his case.

In response, Lisa argues that the trial court properly found that the settlement agreement was ambiguous based on the lack of a definition for "residing." We agree. The word "reside" is a double- or multi-meaning word which creates a semantic ambiguity. A semantic ambiguity is one which lends itself to two (or more) interpretations. It moves the mind in two ways at the same time. For instance, the word "reside" has one meaning in one context (*e.g.*, one's legal domicile) and another meaning in another context (*e.g.*, one's usual place of abode or one's current residence). See Child, Drafting Legal Documents: Materials and Problems 172 (1988); see also Black's Law Dictionary, p. 1502 (10th ed. 2014). Which meaning it has is usually made clear by the context in which it is used. Where this is not the case, ambiguity results.

The word "domicile" means a person's fixed, permanent, and principal home for legal purposes. Black's Law Dictionary 592 (10th ed. 2014). Here, although Foster was living at Lisa's home, he continued to receive his mail at his parents' home. This is an indication that he did not consider Lisa's home his legal domicile. The uncertainty whether "reside" includes one's legal domicile is a problem of semantic ambiguity. What about a person's usual place of abode? Is it included in the term "reside"? Here, the context is no help.

As stated earlier, when a contract or agreement is ambiguous, the parties' intentions are ascertained by considering the language employed, the circumstances existing when the agreement was made, the object sought, and other circumstances tending to clarify the parties' real intentions. *Byers*, 44 Kan. App. 2d at 386.

6

When this agreement was made, the parties were getting a divorce. As the trial court noted, maintenance is based on financial need and financial ability. Here, Lisa had a financial need and Edward had the financial ability to assist her. Although there were conditions listed which allowed Edward's maintenance obligation to terminate, those conditions were all directly related to Lisa's financial need or Edward's financial ability. For example, the other conditions listed that would terminate Edward's maintenance obligation were Lisa's death, Edward's death, or Lisa remarrying. Clearly each of these conditions would have an effect on Lisa's financial need or Edward's financial ability.

The trial court held that it "does not believe the parties' intended a minimal contribution by a tenant would trigger cessation of maintenance." The trial court is correct. Foster's minimal contribution would not greatly reduce Lisa's financial need to justify terminating Edward's maintenance obligation. In fact, the trial court reduced Edward's maintenance obligation by $200 per month—the amount that Lisa had been receiving from Foster. As a result, the trial court properly denied Edward's motion to terminate completely his spousal maintenance payments.

Affirmed.